ACCEPTED
wr14-00126
TWELFTH COURT OF APPEALS
TYLER, TEXAS
3/27/2015 3:09:14 PM
CATHY LUSK
CLERK

No. 12-15-00038-CR

IN THE
COURT OF APPEALS
TWELTH DISTRICT OF TEXAS AT TYLER

FILED IN
12th COURT OF APPEALS
TYLER, TEXAS
3/27/2015 3:09:14 PM
CATHY S. LUSK
Clerk

THE STATE OF TEXAS,

APPELLANT

V.

DANNY RAY SOWELL,

APPELLEE

APPELLANT'S BRIEF

Appeal in Cause Number WR14-00126
294th Judicial District Court
Van Zandt County, Texas

Van Zandt County Criminal District Attorney's Office
Allison Flanagan, Assistant Criminal District Attorney
400 S. Buffalo
Canton, TX 74103
(903) 567-4104
(903) 567-6258 fax

Attorney for the State of Texas

Oral Argument Requested

## IDENTITIES OF PARTIES

Pursuant to the provisions of Rule 38.1(a), Texas Rules of Appellate Procedure, a complete list of the names of all parties to this action and counsel are as follows:

Attorneys for the State:

Chris Martin
Criminal District Attorney
400 S. Buffalo Street
Canton, Texas 75103
Bar Number: 24050016

Allison Flanagan
Assistant Criminal District Attorney
400 S. Buffalo Street
Canton, Texas 75103
Bar Number: 24080057

Attorney for the Appellee:

Forrest Dean White
Attorney at Law
690 W. Dallas Street
P.O. Box 155
Canton, Texas 75103
Bar Number: 21299500

Appellee:

Danny Ray Sowell
806 Alabama, Apt. 6
Sulphur Springs, Texas 75482

# TABLE OF CONTENTS

PAGE

IDENTITIES OF PARTIES AND COUNSEL.........................................2

INDEX OF AUTHORITIES ...........................................................4

STATEMENT OF THE CASE.......................................................5-6

SUMMARY OF THE FACTS.......................................................7-8

ISSUE PRESENTED...................................................................9

**ISSUE #1:** Whether the record reflects the kind of "necessity" required for the mistrial ruling that will avoid a valid plea of double jeopardy?

**ISSUE #2:** If so, whether the plea of Double Jeopardy must nevertheless be allowed to bar further prosecution because the trial court failed to articulate into the record the consideration of less drastic alternatives?

**ISSUE #3:** Whether the plea of Double Jeopardy must be allowed to bar further prosecution because the trial court did not articulate manifest necessity into the record?

SUMMARY OF THE ARGUMENT....................................................10

ARGUMENT AND AUTHORITIES.............................................10-18

PRAYER.................................................................................19

CERTIFICATE OF SERVICE.........................................................20

CERTIFICATE OF COMPLIANCE...................................................20

# INDEX OF AUTHORITIES

**CASE LAW:**                                                **PAGE**

*Arizona v. Washington*, 434 U.S. 497, 98 S.Ct. 824 (1978) .....................9- 18

*United States v. Perez*, 22 U.S. 579 (1824).....................................9, 10, 17

*Wade v. Hunter*, 336 U.S. 684, 69 S.Ct. 834 (1949) ....................9, 11, 12, 14

*Illinois v. Somerville*, 410 U.S. 458, 93 S.Ct. 1066 (1973) .......10, 11, 13, 16, 17

*Simmons v. United States*, 142 U.S. 148, 12 S.Ct. 171 (1891)........10, 13, 16, 17

*United States v. Jorn*, 400 U.S. 470, 91 S.Ct. 547 (1971)..........................10

*Oregon v. Kennedy*, 456 U.S. 667, 102 S.Ct. 2083 (1982)..........................11

*United States v. Dinitz*, 424 U.S. 600, 96 S.Ct. 1075 (1975).....................15

*Thompson v. United States*, 155 U.S. 271, 15 S.Ct. 73 (1894)....................16


**STATUTES:**

U.S.C.A. Const. Amend. 5 ....................................................10, 18

## TO THE HONORABLE JUSTICES OF THE COURT OF APPEAL:

The State of Texas, Appellant, by and through her attorney of record, Allison Flanagan, files this brief.

### Statement of the Case

This is an appeal from a granted Writ of Habeas Corpus filed by the Appellee in the 294th District Court following a granted motion for mistrial made by the State in the Van Zandt County Court at Law. On March 17, 2014, a jury was impaneled and sworn for the case of Danny Ray Sowell in cause number 2013-00136. (CR 58-86). On March 18, 2014, the State moved for a mistrial. (CR83-84). After originally denying the motion for mistrial, the Trial Court ultimately granted the State's motion for mistrial on that same date. (CR85). Appellee filed a Writ of Habeas Corpus requesting Double Jeopardy relief in the Trial Court on April 3, 2014. (Appendix 4-8, CR). On October 7, 2014 the trial court denied the Writ of Habeas Corpus. (Appendix 9, CR). On October 28, 2014, Appellee filed a Writ of Habeas Corpus with the Twelfth Court of Appeals in Tyler, Texas under cause number 12-14-00311-CR. On October 30, 2014 the Twelfth Court of Appeals declined to hear the case as the Court did not have original jurisdiction over the matter. On November 14, 2014, Appellee filed a Writ of Habeas Corpus again requesting relief based on Double Jeopardy in the 294th Judicial District Court of

Van Zandt County, Texas under cause number WR14-00126. The 294th District Court heard argument on that Writ of Habeas Corpus on November 24, 2014. (RR). On January 16, 2015 the 294th District Court entered an order granting the Appellee's Writ of Habeas Corpus and granted Appellee the relief of barring further prosecution under the Double Jeopardy Clause. (CR 87-93).

## Statement of the Facts

On the March 17, 2014, trial began in the case of *State of Texas v. Danny Ray Sowell*, cause number 2013-00136, in the County Court at Law in and for Van Zandt County, Texas. (CR 58-86). Judge Randal McDonald presided over this Driving While Intoxicated case. On March 18, 2014, testimony continued with the cross examination of the State's witness, DPS Trooper Brady Lunceford. (CR 63-86). During cross examination, some issues regarding Defense Counsel's hostility with the witness arose. (CR 72-75). The following exchange occurred within the presence of the jury:

| | |
|---|---|
| *Q.(By Mr. White)* | *You said, yes- -yes or no.* |
| *The Court:* | *Please don't get hostile with the witness, Mr. White.* |
| *Mr. White:* | *Your honor, I think the Court is taking the State's side* |
| *The Court:* | *Sir, I'm not taking the State's side.* |
| *Mr. White:* | *Well, I think you are.* |
| *The Court:* | *You are entitled to a vigorous cross examination. I just -- you don't need to be so hostile to the witness.* |
| *Mr. White:* | *I'm not hostile to him. I just want him. I just want him to answer the question. I'd ask the Court to direct him to answer the question.* |
| *The Court:* | *Mr. White, continue on. Move along. Just move along, Mr. White.* |
| *Mr. White:* | *I have a right to question- -* |
| *The Court:* | *Mr. White, move along.* |
| *Mr. White:* | *Your Honor, I'd ask for a hearing outside the presence of the jury.* |
| *The Court:* | *Denied. Move forward.* |
| *Mr. White:* | *Your honor, then I'm going to have to have to make my objection right here. The Court is* |

*obviously hostile toward me, and I think the Court*
*has treated my client, unfairly and I object to that.*

(CR 74-75).

Defense counsel's cross examination resumed after the above exchange until more questions of Defense Counsel's hostility with the witness arose again. (CR 80-82). The State asked for a hearing outside the presence of the jury at that time which was granted by the Court. (CR 82). The State moved for a mistrial which was initially denied. (CR 83-84). Further discussion between the court and defense counsel occurred wherein the trial court admonished defense counsel against continuing to be hostile with the witness and with the court. (CR 85). The Trial Court granted the State's Motion for Mistrial. (CR 85).

## Issues Presented

1. Whether the record reflects the kind of "necessity" required for the mistrial ruling that will avoid a valid plea of double jeopardy?

2. If so, whether the plea of Double Jeopardy must nevertheless be allowed to bar further prosecution because the trial court failed to articulate into the record the consideration of less drastic alternatives?

3. Whether the plea of Double Jeopardy must be allowed to bar further prosecution because the trial court did not articulate manifest necessity into the record?

## Summary of the Argument

The granting of a mistrial is reviewed on an abuse of discretion standard, taking into consideration the level of necessity evident in the trial record due to circumstances giving rise to the motion for mistrial. *Arizona v. Washington*, 434 U.S. 497, 98 S.Ct. 824 (1978); *United States v. Perez*, 22 U.S. 579 (1824). Great deference is to be given to the trial court's decisions when the potential error could have placed a bias in each of the juror's minds as they are the best judge of the tone, attitude, and demeanor of what is occurring in the court room. *Id., Wade v. Hunter*, 336 U.S. 684, 69 S.Ct. 834 (1949). Defense counsel objected within the presence of the jury that, "The court is obviously hostile toward me, and I think the court has treated my client, unfairly and I object to that." (RR 75). This improper

commentary created a substantial risk of an impartial jury necessitating a mistrial as both sides have the right to have their case fully heard by one impartial jury. *Arizona*, at 511; *Illinois v. Somerville*, 410 U.S. 458, 93 S.Ct. 1066 (1973). The trial court did not enumerate the potential alternatives or the reasoning for granting the mistrial on the record but such failure does not constitute a defect and does not allow a valid plea of jeopardy in this case. *Arizona*, 434 U.S. 497; *Simmons v. United States*, 142 U.S. 148, 12 S.Ct. 171 (1891).

## Argument and Authorities

The Double Jeopardy Clause of the Fifth Amendment to the Constitution of the United States generally bars re-trial of a defendant's case where a jury has been impaneled and sworn absent the defendant's consent or if the mistrial was mandated by "manifest necessity". U.S.C.A. Const.Amend. 5; *Arizona*, 434 U.S. 497; *Illinois*, 410 U.S. 458; *United States v. Jorn*, 400 U.S. 470, 91 S.Ct. 547 (1971). Trial courts are to grant mistrials with great caution and to use sound discretion in view of the totality of the circumstances in front of them. *Perez*, 22 U.S. 579; *Arizona*, 434 U.S. 497.

> *"[R]etrial is not automatically barred when a criminal proceeding is terminated without finally resolving the merits of the charges against the accused. Because of the variety of circumstances that may make it necessary to discharge a jury before a trial is*

*concluded, and because those circumstances do not invariably create unfairness to the accused, his valued right to have the trial concluded by a particular tribunal is sometimes subordinate to the public interest in affording the prosecutor one full and fair opportunity to present his evidence to an impartial jury."*

*Arizona*, 434 U.S. 497. See also, *Wade*, 336 U.S. 684, at 689 (holding that the Double Jeopardy Clause does not offer a guarantee to the defendant that the State will vindicate its societal interest in the enforcement of the law in one proceeding. Otherwise, "the purpose of the law to protect society from those guilty of crimes frequently would be frustrated denying courts power to put the defendant to trial again.").

### A. Level of Scrutiny Applied to Reasoning Behind Mistrial

Where a mistrial was granted without the consent of the other party, manifest necessity for the mistrial must be present to avoid a valid plea of double jeopardy. *Arizona*, 434 U.S. 497; *Illinois*, 410 U.S. 458. The phrase "manifest necessity" cannot be interpreted literally, but the degree of necessity must be determined before concluding whether a mistrial was appropriate. *Oregon v. Kennedy*, 456 U.S. 667, 102 S. Ct. 2083(1982); *Arizona*, 434 U.S. 497. At one extreme of the spectrum of necessity are cases in which the prosecutor intentionally acts in bad faith to "goad" the defense into moving for a mistrial.

*Arizona*, 434 U.S. 497. The strictest scrutiny is appropriate in that scenario as well as in situations where prosecutorial evidence or witnesses are unavailable. *Id.,* at 507. At the other end of this spectrum is the mistrial granted because of a deadlocked jury which has long been considered the classic and proper basis for a mistrial that does not require such a high level of scrutiny and to which the trial judge's decision is to be given a special respect. *Id.,* at 509.

In *Arizona v. State*, the defense counsel made improper comments about inadmissible evidence during opening arguments to the jury. *Id.* That Court held that "[A]long the spectrum of trial problems which may warrant a mistrial and which vary in amenability to appellate scrutiny, the difficulty which led to the mistrial in this case also falls in an area where the trial judge's determination is entitled to special respect." *Id.*, at 510. In *Arizona v. State*, as in the instant case, there is no evidence in the record of prosecutorial misconduct or overreaching. *Id.* On the contrary, defense counsel in both cases made improper statements in front of the jury panel that could have created an impartial jury. *Id.* This is not an issue that requires the strictest scrutiny of the State's behavior, as the improper conduct was perpetrated by the defense, but rather requires great deference to the trial court. *Wade*, 336 U.S. 684, at 687.

> *"There are compelling institutional considerations militating in favor*
>
> *of appellate deference to the trial judge's evaluation of the*

*significance of possible juror bias. He has seen and heard the jurors during their voir dire examination. He is the judge most familiar with the evidence and the background of the case on trial. He has listened to the tone of the argument as it was delivered and has observed the apparent reaction of the jurors. In short, he is far more "conversant with the factors relevant to the determination" than any reviewing court can possibly be."*

*Id.*, at 687.

*"We recognize that the extent of the possible bias cannot be measured, and that the District Court was quite correct in believing that some trial judges might have proceeded with the trial after giving the jury appropriate cautionary instructions. In a strict, literal sense, the mistrial was not "necessary." Nevertheless, the overriding interest in the evenhanded administration of justice requires that we accord the highest degree of respect to the trial judge's evaluation of the likelihood that the impartiality of one or more jurors may have been affected by the improper comment."*

*Arizona,* at 511.; See also, *Illinois,* at 464 (holding that a "trial judge properly exercises his discretion to declare a mistrial if an impartial verdict cannot be reached"); See also, *Simmons,* 142 U.S. 148 (upholding trial court's correct

decision to grant mistrial "because he considered it "impossible that in the future consideration of this case by the jury there can be that true independence and freedom of action on the part of each juror which is necessary to a fair trial of the accused.'").

To apply a stringent standard of appellate review in this area would severely impede the trial judge in performing their duty to protect the integrity of the trial, to ensure both sides are able to try the case in front of a fair and impartial jury, and to put a stop to any professional misconduct. *Arizona*, at 513. Therefore, the trial court's decision in the instant case is to be reviewed to ensure the judge exercised sound discretion in granting the mistrial. *Id.* Great deference is to be given to his decision as he is the best judge of all surrounding circumstances. *Id.*, *Wade*, 336 U.S. 684. We must therefore start from the premise that defense counsel's comments may have affected the impartiality of the jury.

**B. Absence in Record of Consideration of Less Drastic Alternatives**

The absence of consideration of less drastic alternatives in the trial court record seemed to be a primary concern to the 294th in the instant case when hearing the Appellee's Writ of Habeas Corpus. (CR 87-93). It is true, as the court points out in its brief, that the trial court could have held the defense attorney in contempt for making improper comments in front of the jury. (CR 87-93). However, that would have done nothing to cure the potential bias created in each of the jurors'

minds. As the State said at the time of moving for mistrial, there was no instruction to the jury that could have cured such impartiality. (CR 83-84). The Court in *Arizona* had a similar issue to consider and concluded that,

> *"such statements create a risk, often not present in the individual juror bias situation, that the entire panel may be tainted. The trial judge, of course, may instruct the jury to disregard the improper comment. In extreme cases, he may discipline counsel, or even remove him from the trial as he did in United States v. Dinitz, 424 U.S. 600. Those actions, however, will not necessarily remove the risk of bias that may be created by improper argument. Unless unscrupulous defense counsel are to be allowed an unfair advantage, the trial judge must have the power to declare a mistrial in appropriate cases."*

*Arizona*, at 512-513. The record shows the trial court attempted to proceed with trial by initially denying the motion for mistrial and warning defense counsel against continuing to be hostile with the witness and with the court. (CR 83-85). Only after continued admonishments to defense counsel proved to be ineffective and defense counsel persisted in argument did the trial court grant the mistrial. (CR 85). This demonstrates the trial court attempted to cure the situation and move forward with trial. There is no requirement that the trial court articulate its

consideration of less drastic alternatives into the record as long as the record reflects that no other alternative would have cured the error.

## C. Finding of Manifest Necessity

As detailed above, a finding of manifest necessity is made by looking at all of the surrounding circumstances to see if there was a high degree of necessity for the mistrial. *Arizona,* 434 U.S. 497. This determination does not revolve around whether the trial court made an explicit finding of "manifest necessity" but rather if the mistrial was justified and made with sound discretion. *Id.*; *Illinois,* 410 U.S. 458; *Simmons,* 142 U.S. 148; See also, *Thompson v. United States,* 155 U.S. 271, 15 S.Ct. 73 (1894) (holding that although "the record did not demonstrate that the mistrial was strictly "necessary." There can be no doubt, however, about the validity of the conclusion that the possibility of bias justified the mistrial.").

In the instant case, the district court that reviewed the Appellee's Writ of Habeas Corpus placed a very high importance on the absence of an explicit finding of manifest necessity when granting the Writ. (CR 87-93). The Court in *Arizona* had a very similar argument before them and held that,

*"The absence of an explicit finding of "manifest necessity" appears to have been determinative for the District Court and may have been so for the Court of Appeals. If those courts regarded that omission as critical, they required too much. Since the record provides sufficient*

*justification for the state-court ruling, the failure to explain that ruling more completely does not render it constitutionally defective."*

*Arizona*, 434 U.S. 497, at 516-517. The record in the instant case also provides more than sufficient justification that a mistrial was necessary so that both parties could be afforded one whole trial to present all evidence before a fair and impartial jury. (CR 58-86). *Illinois*, 410 U.S. 458; *Simmons*, 142 U.S. 148; See also, *Arizona*, 434 U.S. 497 (holding that although "the mistrial was not "necessary." Nevertheless, the overriding interest in the evenhanded administration of justice requires that we accord the highest degree of respect to the trial judge's evaluation of the likelihood that the impartiality of one or more jurors may have been affected by the improper comment.").

*"We think, that in all cases of this nature, the law has invested Courts of justice with the authority to discharge a jury from giving any verdict, whenever, in their opinion, taking all the circumstances into consideration, there is a manifest necessity for the act, or the ends of public justice would otherwise be defeated. They are to exercise a sound discretion on the subject; and it is impossible to define all the circumstances, which would render it proper to interfere."*

*United States* v. *Perez*, 22 U.S. 579 (1824). The statement made by defense counsel after asking for a hearing outside of the jury's presence did not amount to a legal objection found in the Texas Rules of Evidence. To disallow a trial court to grant a mistrial under such circumstances and allow a plea of jeopardy is asking for an absurd result that the Double Jeopardy Clause did not contemplate. U.S.C.A. Const. Amend. 5. Not only would necessary discretion be stripped from trial courts, but such a ruling would invite misconduct from unscrupulous defense counsel. *Arizona*, 434 U.S. 497 . "[I]n these circumstances, "the public's interest in fair trials designed to end in just judgments" must prevail over the defendant's "valued right" to have his trial concluded before the first jury impaneled." *Id.*, at 516. For this and all reasons stated above, the trial court used sound discretion in the face of a necessary mistrial where Double Jeopardy should not bar further prosecution.

## PRAYER FOR RELIEF

**WHEREFORE**, Appellant respectfully prays this Honorable Court find the prosecution is not barred by the Double Jeopardy Clause, reverse the lower court's order granting Apellee's Writ of Habeas Corpus, and remand this case back to the Trial Court for further prosecution.

Respectfully submitted,

Allison Flanagan
State Bar Number 24080057
Assistant Criminal District Attorney
Van Zandt County
400 S. Buffalo, Canton TX 75103

## CERTIFICATE OF SERVICE

I certify that a true and correct copy of the foregoing document was delivered upon the Attorney for Appellee, Forrest Dean White, on March 27, 2015.

Allison Flanagan

## CERTIFICATE OF COMPLIANCE

Pursuant to Texas rules of Appellate Procedure 9.4(i)(3), I hereby certify that this brief contains 2,967 words excluding the caption, table of contents, table of authorities, signature, proof of service, certification, and certificate of compliance. This is a computer-generated document created in Microsoft Word, using 14-point typeface for all text. In making this certificate of compliance, I am relying on the word count provided by the software used to prepare the document.

Allison Flanagan